**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No: 5:24-CR-00002** |
| | **:** | |
| **WILLY ALEXANDER KORTHALS** | **:** | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America hereby provides its position with respect to sentencing for the defendant, Willy Alexander Korthals. The United States requests that this Court adopt the findings of the Pre-Sentence Investigation Report ("PSR") and find an upward variance is appropriate and sentence the defendant to 84 months.

The § 3553(a) factors support a sentence of 84 months and such sentence is sufficient but not greater than necessary in this case. Such a sentence reflects the nature and circumstances of the defendant's conduct, in which he engaged in graphic sexual conversations with a child he believed to be nine years old and to whom he sent a photograph of his genitals. It also takes into account the defendant's history, which includes his sexual abuse of a young child when he was a teenager. A meaningful period of incarceration is finally necessary for both specific and general deterrence in a case in which the defendant has shown a pattern of sexual abuse of children and sends a strong message to those who would seek to engage in such criminal conduct.

## I.    Factual Background[1]

### a.  Undercover Chats

Between May 2022 and June 2023, the defendant, Willy Alexander Korthals, engaged in graphic sexual conversations with an individual he believed to be the father of a nine-year-old girl and the nine-year-old girl herself.  Unbeknownst to Korthals, he was actually communicating with an FBI online covert employee ("OCE") who was using a covert social media account on Kik to target subjects engaged in child exploitation.  In those conversations with the OCE and the nine-year-old ("UC daughter"), Korthals discussed in detail the type of sexual abuse he wanted to perform on UC daughter.  Korthals also repeatedly asked for sexually explicit photographs of the child and requested OCE to describe his sexual abuse of his daughter.

### i.  Korthals's explicit and disturbing chats about child sexual abuse

On the very day Korthals reached out to OCE after responding to a public group thread in which OCE asked, "Anyone want to come to Virginia to have sex with my daughter?" Korthals immediately asked for details about how OCE groomed the young child.  One example is below:

> KORTHALS: Damn she's young, you want her to be used[2]?
>
> OCE: She been used since she was 7 we have made a game of it and now she really enjoys it
>
> KORTHALS: You have been using her since she was 7?
>
> OCE: Yeah that when it really got started
>
> OCE: I was taught the ways at 5 by my dad and passed them on to her
>
> KORTHALS: How did it start with her?

---

[1] The Information, PSR, and statement of facts set forth the criminal conduct in this case.  The information included here is drawn from those documents unless otherwise stated.

[2] Typically, in this context, "used" means to be used as a sexual object.

OCE: Slow cuddles turned to tickles turned to my fingers exploring to all sorts of naughty activity

KORTHALS: Did you have to force yourself in her the first time?

OCE: No went super slow till she liked it

KORTHALS: That's hot as fuck man

…

KORTHALS: You do cum inside her right?

OCE: I do

KORTHALS: She's to[o] young to breed so why not

…

KORTHALS: She gives attitude just use her asshole lol

OCE: That's true

KORTHALS: Just give her a good hard spanking then fuck her asshole good and hard

Govt. Ex. 1, pgs. 3-5, 15-16, 18.

Throughout the conversation, Korthals asked the OCE to describe specific acts of sexual abuse he performed on UC daughter. Korthals also asked what UC daughter's vagina looked like and stated, "I need a daughter. Lol." *Id*. at p. 51.

During the conversations, Korthals detailed the sexual abuse he wanted to commit on UC daughter. For instance, on May 9, 2022, Korthals told OCE the following:



> From: alex154956 Alex K
> I want to fuck her as hard as I possible can, and fuck her asshole. And fill her with my cum.
> Delivered: 5/9/2022 10:33:48 AM(UTC-4)
>
> 5/9/2022 10:33:48 AM(UTC-4)

> **From: alex154956 Alex K**
> Honestly if I could fuck her till she cried I'd be so happy.
> Delivered: 5/9/2022 10:34:05 AM(UTC-4)
>
> 5/9/2022 10:34:05 AM(UTC-4)

*Id*. at p. 36.

Korthals described wanting to perform vaginal and anal sex on UC daughter and have the nine-year-old perform oral sex on him.  Korthals told OCE he wanted to "treat [UC daughter] like a whore" and "f**k her brains out until she can't walk right."   Korthals also told OCE about his military service and told OCE to tell his nine-year-old daughter that it was her patriotic duty to be sexually active with him, as seen below:

> **From: alex154956 Alex K**
> Lol you can tell her it's her patriotic duty to give me her holes
> Delivered: 5/9/2022 11:31:46 AM(UTC-4)
>
> 5/9/2022 11:31:46 AM(UTC-4)

*Id*. at p. 42.

During these conversations, Korthals discussed meeting up with OCE and UC daughter so he could sexually abuse the child.  Korthals described in detail what types of sexual abuse he wished to commit against the young girl.  For instance, on June 7, 2022, Korthals described to UC daughter what he would do when they met in person:

> **From: +17605579851**
> While your sucking my cock I face fuck you. Spread your legs as wide as possible so I can get as deep as possible might slap a little. Pulling your hair. Forcing you to play with your clit while I'm in your ass.
> Status: Read
>
> 6/7/2022 12:27:39 PM(UTC-4)

Govt. Ex. 2, p. 32.

**Govt.'s Sentencing Memorandum**            **Page 4 of 25**

ii. **Korthals plans an in-person meeting to abuse the nine-year-old.**

Not only did Korthals discuss in graphic detail the type of sexual abuse he wanted to commit against the young girl, he also attempted to set up an in-person meeting.  In the chats with both OCE and UC daughter, Korthals's agreed to meet them in-person on August 19, 2022, near Korthals's home in North Carolina.  In advance of the meeting, Korthals told the young girl the type of sex acts he would subject her to and the sexual acts he expected the nine-year-old to perform.  Korthals also sent OCE his results from a sexually transmitted disease test so that Korthals could have sexual intercourse with the minor without a condom.  Two days prior to the meeting, Korthals cancelled.

iii. **Korthals repeatedly asked for photographs of the nine-year-old and to watch OCE sexually abuse his daughter.**

In Korthals's communications with OCE and UCE daughter he repeatedly requested "live" photographs of the nine-year-old.  During his chats with OCE, he asked for photographs of the child on more than 20 occasions.  Initially, when OCE put up resistance to sending Korthals child sexual abuse material ("CSAM") of his young daughter, Korthals brought up the topic of using Wickr, a social media application that allows users to exchange end-to-end encrypted and content-expiring messages.[3]  During his requests, Korthals tried to convince OCE he was not law enforcement and that it was safe to send him CSAM.  An example of that is found below:

KORTHALS: Send them then delete it. Or let her send them.

KORTHALS: I'm no fucking cop, I'm not even in the military anymore

Govt. Ex. 4, p. 167.

Korthals also attempted to convince the nine-year-old to send him photographs.  On numerous occasions Korthals asked UC daughter to send him pictures of herself, despite the OCE

---

[3] Wickr is commonly used to exchange CSAM.

**Govt.'s Sentencing Memorandum**          **Page 5 of 25**

explicitly telling Korthals he would not allow his daughter to do so.  *See* Govt. Ex. 2.  Finally, in an effort to motivate the nine-year-old to send him photographs of herself, Korthals sent UC daughter a photograph of his exposed, erect penis and stated, "Your turn."  Govt. Ex. 3 at p. 19-20.

Along with Korthals's disturbing sexual communications and transfer of obscene material to a minor, Korthals requested a Facetime with OCE and UC daughter so he could watch OCE abuse his daughter.  Korthals specifically asked OCE to strip UC daughter and "spread [her buttocks] apart" and insinuated he would watch any sexual abuse that OCE engaged in after that. Korthals went so far as to discuss with the nine-year-old how long her father could "resist" the child and guessed OCE could resist "for about 5 minutes then his cock will come out."  Govt. Ex. 2, pgs. 159, 161.  Later that night, Korthals attempted to Facetime OCE three times.  When OCE did not answer, Korthals texted him to ask if he was going to answer and whether he was home.

### b.  Korthals's sexual abuse of a child

Not only did Korthals describe in disturbing detail the sexual abuse he wished to commit against UC daughter, request sexually explicit photographs and videos of her, and send her a photograph of his exposed genitals, Korthals also has a history of hands-on sex offenses against a child.  As detailed in the Bay City police report from September 2020, during the summers of 2006 and 2007, Korthals babysat two, young relatives during the workday.  While these children were in his care, he sexually abused one of the children who was six years old at the time.  Govt. Ex. 6.

Specifically, Korthals brought pornographic DVDs to the child's house and required her to watch them with him.  Korthals made the child play "doctor" with him and would penetrate her vagina with various objects and his fingers.  Korthals also forced the child to perform oral sex on him and would masturbate in front of her.  His victim described refusing to perform his requested

sexual acts and crying about the abuse, but the abuse continued because Korthals threatened to abuse her younger sibling if she did not comply.

This sexual abuse is corroborated in a few ways.  First, when S.S. reported the sexual abuse to local law enforcement in 2020, law enforcement facilitated a covert, recorded call to Korthals. In the call, Korthals apologized to S.S. and stated he hoped S.S. would forgive him one day. Korthals further admitted to remembering "touching" and being ashamed of what happened and asks S.S. to "keep this between" them.  Govt. Ex. 6, pg. 3.

Korthals also admitted to this conduct during his conversations with the UCE.   For instance, on May 5, 2022, Korthals had the following conversation with the OCE:

> OCE: You ever been lucky with young before
>
> KORTHALS: When I was about 15 yeah
>
> OCE: Nice how young were they
>
> KORTHALS: My cousin was 6[4]
>
> OCE: Nice
>
> OCE: Something about it that's so addicting
>
> KORTHALS: How tight they are and how you know you shouldn't do it

Govt. Ex. 1, pgs. 10-12.

Korthals's abuse of his relative is further corroborated by the fact that when he was interviewed by the FBI on June 29, 2023, Korthals once again stated he sexually abused his six-year-old relative when he was a teenager.  *See* Govt. Ex. 5, ¶ 12.

---

[4] Korthals states in the chat that the child he abused was 6 years old, which is consistent with the age of S.S. when Korthals first began abusing her.  *See* Govt. Ex. 6.

**Govt.'s Sentencing Memorandum**                **Page 7 of 25**

### c.  CSAM image found on Korthals's cellphone

Finally, as detailed in the Declaration of TFO Zachary Hawkin (Govt. Ex. 5), Korthals's cellphone was seized on June 29, 2023 pursuant to a search warrant.  A review of the cellphone discovered one image of CSAM.  The photograph depicts an image of a prepubescent minor female exposing her undeveloped breasts and vagina in a sexually explicit display.  Govt. Ex. 5, ¶ 8.  The image is related to a chat group that is entitled, "Rape Kids."  *Id*.

## II.  Guidelines Calculation

As the Court is well aware, although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing."  *United States v. Booker*, 543 U.S. 220, 261 (2005).  Thus, at sentencing a court "must first calculate the Guidelines range."  *Nelson v. United States*, 555 U.S. 350, 351 (2009).  Here, the PSR's advisory Guidelines range is 18 to 21 months.  The calculated range includes a base offense level of 10, a five-level enhancement for distribution to a minor and a two-level enhancement for use of a computer.  It also includes a three-level reduction for acceptance of responsibility and a Criminal History Category of I.

The government does not object to the Guidelines calculation but is seeking an upward variance from the high end of the Guidelines. The government is seeking a sentence of 84 months. This sentence is supported by the 3553(a) factors, particularly the nature and circumstances of the offense and the defendant's prior criminal conduct.

## III.  Section 3553(a) Factors

As the Court is also well aware, after calculating the Guidelines, a sentencing court must then consider that Guidelines range, as well as the sentencing factors set forth in § 3353(a), and determine a sentence that is appropriate and reasonable for the individual defendant.  *Nelson*, 555

U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).  With respect to § 3553(a)'s enumerated factors, of particular pertinence here are the "nature and circumstances of the offense," "the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense," and to "afford adequate deterrence to criminal conduct." § 3553(a)(1), (a)(2)(A), (a)(2)(B).  As explained below, based on those factors, a sentence of 84 months of incarceration is appropriate in this case.

> **a.  The defendant not only sought to transfer obscene material to a minor, but he also took steps to watch the sexual abuse of a child and meet up to sexually abuse a nine-year-old.**

The nature and circumstances of the offense calls for a sentence of 84 months.  Over the course of several months, the defendant engaged in graphic and disturbing communications with OCE and a child he believed to be nine years old.  In these chats, Korthals asked for OCE to describe his sexual abuse of UC daughter and sought permission to perform various sex acts on the child.  Korthals discussed possibly impregnating the child when she was 13 or 14 years old and told the child he would force her to "suck [his] cock," "f**k [her] pussy and ass cum…then piss all over [her face]."  Govt. Ex. 2, pg. 31.

It is further aggravating that not only did Korthals send a photograph of his erect penis to UC daughter, Korthals also repeatedly asked for photographs and videos of the child.  On more than 20 occasions, Korthals asked both OCE and UC daughter for these photos.  And in an attempt to see and direct the sexual abuse of a child, Korthals scheduled a Facetime with OCE and described for OCE the sexually explicit actions he wanted to see OCE commit against UC daughter.  The night of the scheduled video call, Korthals Facetimed OCE three different times. When OCE did not answer, Korthals texted him to ask if he was home and going to answer the phone.

Further, Korthals arranged a meeting with OCE and his nine-year-old daughter. Korthals discussed places where he could abuse the child, including his place of work. And Korthals's discussions with OCE and UC daughter made it clear what Korthals intended to do with UC daughter when they met in-person. In preparation for the in-person meeting, Korthals even sent the results of a sexually transmitted disease report so that he could abuse the child without a condom. *See* Govt. Ex. 1, p. 29; Govt. Ex. 4, p. 240.

Even more aggravating, Korthals sent a sexually explicit photo – in hopes of receiving one in return – to a child he believed was still in elementary school. This is not a case in which Korthals sent an obscene photograph to a minor who was close to the age of majority. Rather, he believed she was nine years old. The calculated Guidelines range does not take into account all of the aggravating factors about this case and therefore, an upward variance is appropriate.

### b. A lengthy prison sentence reflects the defendant's history and prior sexual abuse of a child.

This case is not just online chatter or some sort of perverse fantasy. Instead, Korthals previously engaged in hands-on offenses against a child and his online activity with the OCE and UC daughter is a reflection of that sexual abuse. As detailed in Govt. Ex. 6, Korthals abused S.S. for two summers when she was in his care.[5] At the time of the abuse, S.S. was six and seven years old.

The Court may consider the facts contained in the Bay City police report, which is attached as Govt. Ex. 6. "It is well established that a court may, for purposes of sentencing, consider any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy." *United States v. Mondragon*, 860 F.3d

---

[5] S.S. initially went to local law enforcement about this conduct back in 2020. Once she learned of Korthals's guilty plea in this case, she contacted the FBI and came forward.

227, 233 (4th Cir. 2017) (internal quotation marks omitted).[6]   Specifically, as detailed by the reports, S.S. was 6 years old when the abuse started.  For two summers, Korthals babysat S.S. and her younger sibling.  Korthals used that opportunity to routinely sexually abuse S.S.  Korthals required S.S. to play "doctor" with him and penetrated her with various objects and his fingers.  Korthals also forced S.S. to perform oral sex on him and forced her to watch him masturbate.  If S.S. did not perform sexual acts on Korthals as he requested, he threatened he would sexually abuse S.S.'s sibling as well.

Korthals's prior sexual abuse of a child is a particularly aggravating factor in this case and the Guidelines do not adequately take into account his prior hands-on offenses involving a child. The Court should consider Korthals's prior sexual assault of a child when sentencing him. This is not a case of online sexual fantasy or a momentarily lack of judgment.  Rather, Korthals's communications with OCE and UC daughter are reflections of Korthals's prior sexual abuse of a child and show his propensity to engage in this behavior.  And Korthals admitted in his chats with OCE that he knew such conduct was wrong.   When describing abusing a child, Korthals specifically remarked to the OCE, "How tight they are and how you know you shouldn't do it." Govt. Ex. 1, pg. 12.

Further, it is clear that Korthals engages in groups that promote the sexual abuse of children.  Korthals met the OCE in a Kik chat room that was centered around parents who sexually abuse their children.  And he responded to a user who asked if someone wanted to have sex with their young daughter.  Additionally, FBI agents found one image of CSAM on his phone.  The CSAM was from a group chat "Rape Kids."

---

[6] S.S. will be present and testify at Korthals's sentencing.  S.S. is prepared to explain to the Court the abuse she experienced at the hands of Korthals.

By sentencing Korthals to 84 months, the Court sends a strong message to Korthals that it will not tolerate such behavior and that if he chooses to continue to hurt children in such a way, there will be further serious consequences.

### c.   A sentence of 84 months is necessary for both specific and general deterrence and sends a strong message.

At a time when it is easy for people to log onto a computer to seek out CSAM or use the internet to find a minor to sexually abuse, it is important to send a strong message to those who choose to continue to prey on our vulnerable youth.  The need for effective deterrence through a severe sentence here is essential.  *See United States v. Schoultz*, 340 F. App'x 852, 854 at *5 (4th Cir. 2009) (citing *United States v. Phinazee*, 515 F.3d 511, 515-16 (6th Cir. 2008)) (acknowledging that both specific and general deterrence are proper considerations under 18 U.S.C. § 3553(a)).  The Court needs to send a strong message to Korthals to demonstrate how seriously it takes his conduct and to help prevent him from engaging in this sort of criminal activity again.  His history and the type of conversations he was engaged in, raise serious concerns about the possibility of recidivism.  *See United States v. Cheek*, 415 F.3d 349, 351 (4th Cir. 2005) ("recidivism is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.").  A sentence within the Guidelines is simply insufficient in this case and an upward variance from the high-end of Korthals's guideline range is appropriate.  *See United States v. Grubbs*, 585 F.3d 793, 803-805 (4th Cir. 2009) (affirming upward departure or variance where defendant had engaged in uncharged sexual molestation of seven additional minor victims over a period of at least 20 years); *United States v. Whorley*, 550 F.3d 326, 342-43 (4th Cir. 2008) (affirming a 33% upward departure from 15-year mandatory minimum to 20-year sentence based, in substantial part, on unconvicted criminal conduct).

Further, an upward variance shows the community that these are not just "internet" or "fantasy" crimes.  But-for law enforcement being on the other side of the conversation with Korthals, he could have aided in the sexual abuse of a child.  The general public needs to know that the justice system acts swiftly and punishes those who engage in such behavior.  A sentence of 84 months sends a strong message and tells those who choose to engage in such criminal behavior to proceed with caution.

### IV.     Sentencing Exhibits and Testimony

The Government intends to call S.S. to testify at sentencing.  The Government will also introduce the chats that are attached to this memorandum (Govt. Exs. 1 through 4), the Declaration of Task Force Officer Zachary Hawkins (Govt. Ex. 5), and the Bay City Police Report (Govt. Ex. 5).  The Government reserves the right to present additional testimony, other exhibits, and a supplemental filing in response to any memoranda or exhibits that the defendant files or chooses to introduce at sentencing.

### V.     Responses to Defense's Objections to Conditions of Supervised Release

Under 18 U.S.C. § 3583(d)(1), "district courts are afforded broad latitude to impose conditions on supervised release." *United States v. Douglas*, 850 F.3d 660, 663 (4th Cir. 2017) (quotation marks omitted).  A court may impose "any special condition that is 'reasonably related' to the statutory sentencing factors referenced in 18 U.S.C. § 3583(d)(1)." *Id.*  These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence of criminal conduct, and the need to protect the public from additional crimes by the defendant." *Id.* The conditions imposed must "involve[] no greater deprivation of liberty than is reasonably necessary" to serve these purposes and must be "consistent with any pertinent policy statements issued by the Sentencing

Commission."[7] 18 U.S.C. § 3583(d)(2), (3).   "It is not necessary for a special condition to be supported by each factor enumerated . . . Rather, each is an independent consideration to be weighed." *United States v. Moran*, 573 F.3d 1132, 1139 (11th Cir. 2009).  The conditions imposed must be based on an individualized assessment of the defendant, and the court must explain why the special conditions are appropriate in light of the 18 U.S.C. § 3583(d) factors.  *United States v. Hamilton*, 986 F.3d 413, 420 (4th Cir. 2021); *United States v. Arbaugh*, 951 F.3d 167, 179 (4th Cir. 2020) (finding that the district court must "explain what facts led to its decision to impose the . . . special conditions on *this* defendant.") (emphasis added).

For defense objections related to Standard Condition 4 and Sex Offender Conditions 1, 3, 4, 15, 17, 18, and 19, the Government defers to the Court.  For the remaining objections, the Government responds below.

### a. Korthals's objection to Standard Condition 10 and Special Condition 2 should be denied.

Korthals agrees he cannot and should not possess a firearm but requests the Court to modify Standard Condition 10 and Special Condition 2 to allow him to reside in a home with a firearm. The proposed conditions are substantively reasonable and are appropriate.  These conditions are reasonably related to protecting the public from Korthals and provide protection to probation. During his term of supervised release, probation officers will have to conduct unannounced home visits to ensure that Korthals is complying with his terms of supervision.  This condition provides

---

[7] This does not restrict the court to imposing only conditions "recommended" by §5D1.3 of the Sentencing Guidelines Manual. *See United States v. Comer*, 5 F.4th 535, 541-45 (4th Cir. 2021) (upholding a supervised-release restriction that does not appear in USSG §5D1.3); *Hamilton*, 986 F.3d 413, 421 (4th Cir. 2021) (same); *United States v. Dotson*, 324 F.3d 256, 260 (4th Cir. 2003) (same). The Commission's policy statements do not purport to limit the court's discretion to impose conditions beyond those that appear in the Guidelines Manual. To the contrary, the Commission has specified that the court "*may* impose other conditions" to the extent they meet the statutory requirements of 18 U.S.C. § 3583(d). USSG §5D1.3(b) (emphasis added). Simply put, "a district court has discretion to craft conditions of supervised release even if the Guidelines do not recommend those conditions." *Sealed Appellee v. Sealed Appellant*, 937 F.3d 392, 405 (5th Cir. 2019) (cleaned up).

an extra level of safety to probation officers who are tasked with ensuring that Korthals is complying with this Court's supervision orders. *See* 18 U.S.C. § 3603(4) ("A probation officer shall . . . be responsible for the supervision of . . . a person on supervised release who is known to be within the judicial district.").  Therefore, it is reasonable and appropriate to require Korthals to reside in a homes free of firearms.

### b. Sex Offender Conditions 6 & 7 are appropriate given Korthals's crimes.

Korthals argues that plethysmographs and polygraphs are not scientifically reliable and therefore, the probation office should not use polygraph exams to monitor Korthals's compliance while on supervision (Sex Offender Condition 6) and, even if deemed appropriate and recommended by a qualified mental health professional, polygraph exams and plethysmograph exams should not be used as a method of treatment for Korthals (Sex Offender Condition 7). Korthals also asserts that the use of a polygraph exam to monitor his compliance with supervision would raise Fifth Amendment concerns.  Korthals's arguments, however, lack merit and should be denied.

First, the Fourth Circuit has already deemed plethysmograph exams and polygraph exams as useful tools for treatment of sex offenders.  *See United States v. Dotson*, 324 F.3d 256, 261 (4th Cir. 2003).  In support of its holding that polygraph exams could be employed as a potential treatment tool upon a sex offender's release from prison, *Dotson* cited favorably to two circuit

court opinions: *United States v. Zinn* and *United States v. Lee*. In both *Zinn*[8] and *Lee*[9], the Eleventh and Third Circuit held that polygraph exams could be employed as a condition of supervised release to "ensure compliance with probationary terms," *Zinn*, 321 F.3d 1084, 1090 (11th Cir. 2003), and that "polygraph testing could be beneficial in enhancing the supervision and treatment of a sex offender." *Lee*, 315 F.3d 206, 217 (3d Cir. 2003). Although whether a polygraph exam condition for determining compliance with supervised release conditions was not specifically before the *Dotson* court, the fact that it favorably cited to *Zinn* and *Lee* is compelling.

Korthals's claim that compelling him to submit to polygraph exam could raise Fifth Amendment concerns also does not support removing the polygraph condition. The Fifth Amendment's self-incrimination clause provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. Because the Fifth Amendment pertains to "compelled" testimony, a person seeking to invoke the protections of the Fifth Amendment generally "must assert the privilege rather than answer." *Minnesota v. Murphy*, 465 U.S. 420, 429 (1984). Therefore, the privilege against self-incrimination is not "self-executing," but must be invoked. *United States v. Lara*, 850 F.3d 686, 692 (4th Cir. 2017).

The general rule that the privilege must be claimed when self-incrimination is threatened may be waived, however, if "the assertion of the privilege is penalized so as to 'foreclos[e] a free choice to remain silent, and . . . compe[l] . . . incriminating testimony.'" *Murphy,* 465 U.S. at 434.

---

[8] In *Zinn*, the supervised release condition regarding the use of polygraph exams read as follows: "You shall participate as directed in a program of mental health treatment including a sexual offender treatment program approved by the probation officer. You shall abide by the rules, requirements and conditions of the treatment program, including submitting to polygraph testing, at your own expense, to aid in the treatment and supervision process. The results of the polygraph examination may not be used as evidence in court to prove that a violation of community supervision has occurred, but may be considered in a hearing to modify release conditions."

[9] In *Lee*, the supervised release condition regarding the use of polygraph exams read as follows: "The defendant shall submit to random polygraph examination, examination to be administered by a certified examiner, at the direction and discretion of the United States Probation Officer."

According to the *Murphy* Court, if the government, either expressly or by implication, "asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." *Id.* at 435.

But a requirement for a probationer to appear and answer questions from his probation officer, "without more, does not give rise to a self-executing [Fifth Amendment] privilege." *Murphy*, 465 U.S. at 435. So, if the probationer "was free to claim the privilege and would suffer no penalty as the result of his decision to do so," and did not assert the privilege but instead "[cho]se to answer, his choice is considered to be voluntary." *Id.* at 429.

Therefore, the fact that Korthals is under a condition to answer his probation officer's questions truthfully and to submit to a polygraph exam does not create a penalty situation under *Murphy*, nor does it create any reasonable basis for Korthals to conclude that invoking the privilege would result in revocation. *See, e.g.*, *United States v. Linville*, 60 F.4th 890, 898 (4th Cir. 2023); *Owens v. Kelley*, 681 F.2d 1362, 1369 (11th Cir. 1982) ("The condition does not stipulate that [the probationer] must answer incriminating questions. If any question is asked during [the lie detector exam] which [the defendant] believes requires an incriminating answer he is free to assert his Fifth Amendment privilege."); USSG §5D1.3, comment. (n.1). At any rate, Korthals's claim that compelling him to submit to polygraph exam could raise Fifth Amendment concerns "at this juncture is merely speculative." *United States v. Talada*, 380 F. App'x 255, 258 (4th Cir. June 2, 2010) (citing *United States v. Zinn*, 321 F.3d 1084, 1092 (11th Cir. 2003)).

In the end, considering Korthals's crime and personal history, Korthals's poses a danger to others and is likely to require further rehabilitation upon his release from prison. Given the high rates of recidivism among sex offenders, monitoring Korthals's compliance with the terms of his

supervision and ensuring that he is receiving the proper medical care or other correctional treatment is paramount. *See* 18 U.S.C. §§ 3583(d)(1), (2) and 3553(a)(1), (2)(D).  Also, requiring Korthals to submit to polygraph examinations may act to "deter [Korthals] from violating the terms of his probation by instilling in him a fear of detection." *Kelley*, 681 F.2d at 1370.  Such a deterrent effect can assist Korthals in his rehabilitative efforts while also protecting the public from Korthals's future conduct. *See* 18 U.S.C. § 3553(a)(2)(B), (D).

Likewise, Korthals is already directed to receive an evaluation and risk assessment by a qualified mental health professional.  The additional requirement that Korthals undergo additional testing through either a plethysmograph or polygraph exam also does not place a significantly greater demand on him.  Additionally, the use of plethysmograph or polygraph exams are not mandated by either the court or probation under Sex Offender Condition 7.  Rather, if a qualified mental health professional finds them necessary to conduct a proper evaluation of Korthals, or as part of Korthals's treatment regimen, then such exams can be requested and Korthals should comply with the recommendations of his mental health provider.

For these reasons, Korthals's objections to the use of polygraph and plethysmograph exams in Sex Offender Conditions 6 and 7 should be denied.

### c. Sex Offender Condition 7's requirement that Korthals take medication subscribed to him as part of his treatment is appropriate and reasonable.

Korthals also objects to Sex Offender Condition 7 that he "take all medications reasonably related to his condition…"  ECF No. 35, p. 13.  According to Korthals, "The Court should not be in the business of forcing a defendant to take certain medications."  ECF No. 36, p. 3.

Given the high rates of recidivism among sex offenders and Korthals's own history of sexual abuse, ensuring that Korthals is receiving the proper medical care or other correctional treatment is important to both Korthals's rehabilitation and in protecting the public.  *See United*

*States v. Henson*, 22 F.App'x at 112 (4th Cir. Oct. 19, 2001) ("Restrictions affecting constitutional rights are valid if directly related to advancing the individual's rehabilitation and to protecting the public from recidivism.") (citing *United States v. Crandon*, 173 F.3d 122, 128 (3d. Cir. 1999)). Furthermore, despite Korthals's history of sex offenses, it does not appear that he has ever received sex-offender treatment. This further supports Sex Offender Condition 7's requirement that Korthals take medications reasonably related to his condition and recommended by his mental health professional.

For these reasons, Korthals's objection to Sex Offender Condition 7 should be denied.

**d. Given Korthals's conduct and the need to protect the public from Korthals's future crimes, his objection to Sex Offender Condition 8 must be denied.**

Korthals next challenges the condition stipulating that he cannot buy, possess, or use any computer device,[10] cellular telephone, or other Internet-capable device "without prior approval of the court, upon consultation with probation." ECF No. 35, p. 14. According to Korthals, he has never used a camera or video recording device inappropriately. ECF. No. 36, p. 3. Such assertion, however, is in direct contradiction to Korthals's multiple attempts to receive CSAM from a 9 year old, the fact that he sent a picture of his penis to someone he believed was nine years old, and his attempts to watch on Facetime the sexual abuse of a child. Given the nature and circumstances of Korthals's offense and the need to protect the public from additional crimes by Korthals, Sex Offender Condition 8 as proposed by probation is critical and should not be modified.

This condition is reasonably related to the statutory conditions outlined in § 3583(d). This condition also involves no greater deprivation of liberty than is reasonably necessary to serve these purposes. This condition does not bar computer access with no exception or "categorically deprive

---

[10] As defined in 18 U.S.C. § 1030(e)(1).

[Korthals] of the use of a computer."  *See United States v. Granger*, 117 F.App'x 247 (4th Cir. Dec. 8, 2004) (affirming a special condition that barred defendants use and possession of computer that could access the internet for a three-year term of supervised release, with no exceptions). Rather, Korthals may have access to the proscribed items after he obtains approval from the court. Finally, the Guidelines expressly recommend a condition limiting a sex offender's computer access. USSG §5D1.3(d)(7)(B).

### e. Korthals's modification to Sex Offender Condition 13 undermines the statutory sentencing factors in 18 U.S.C. § 3583(d), is not supported by law, and should be denied.

Korthals requests that the Court modify Sex Offender Condition 13 to require probation to have "reasonable suspicion that Mr. Korthals has violated the conditions of supervised release, and that evidence of the anticipated violation will be on the device . . . ."  ECF No. 36, p. 3. As elaborated on below, Korthals's modification undermines the purposes of supervision and many of the statutory sentencing factors referenced in 18 U.S.C. § 3583(d)(1).  Furthermore, the federal circuits and the Supreme Court have recognized that post-incarcerated individuals under supervision have a diminished expectation of privacy and do not enjoy the full protections of the Fourth Amendment, up to even permitting suspicionless, warrantless searches by probation officers.  *See, e.g.*, *Samson v. California*, 547 U.S. 843, 844 (2006); *United States v. Midgette*, 478 F.3d 616, 624 (4th Cir. 2007); *Kelley*, 681 F.2d at 1368; *United States v. Boudreau*, 58 F.4th 26, 33 (1st Cir. 2023); *United States v. Sulik*, 807 F.App'x 489, 492-93 (6th Cir. March 31, 2020) (noting that suspicionless-search conditions do not categorically offend the Fourth Amendment as applied to probationers, parolees, and those on supervised release) (citing cases). Thus, Korthals's modification to Sex Offender Condition 13 is baseless.

"This system of supervised release serves several purposes . . ." *Hamilton*, 986 F.3d at 418. "Key among these are protection of the public . . . and rehabilitation of the defendant."  *Id.* "The

goals of protecting the public and rehabilitating the defendant need not be at cross-purposes—the public is better protected when the defendant is rehabilitated and success is more likely without a sudden shift from the completely structured life of incarceration to a completely unstructured one outside the prison walls." *Id.* The public is also protected when the offender is deterred from committing an offense again. Requiring that any search of Korthals's "computer, . . . electronic communication devices, data storage devices, or other Internet-capable devices" be based on reasonable suspicion, however, would undermine these goals.

First, a "reasonable suspicion" requirement would reduce Sex Offender Condition 13's capacity to protect the public and deter Korthals from further misconduct. Requiring "reasonable suspicion" would remove Korthals's incentive to keep away from having inappropriate discussions with minors or receiving nude photographs from minors if Korthals believed his probation officer would have no reason to know about it. *See Samson v. California*, 547 U.S. 843, 854-55 (2006) ("Imposing a reasonable suspicion requirement, as urged by petitioner, would give parolees[11] greater opportunity to anticipate searches and conceal criminality . . . the incentive-to-conceal concern justifie[s] an 'intensive' system for supervising probationers . . ."); *United States v. Hanrahan*, 508 F.3d 962, 971 (10th Cir. 2007). ("Searches based on some particularized level of suspicion . . . would not likely be as effective at deterring future crimes of possession since the defendant could easily conceal such wrongdoing."); *Kelley*, 681 F.2d at 1368 ("Searches of the residence and person of probationers, however, are not conducted only when there is suspicion of a crime. . . [T]he primary purpose of such searches is to deter the commission of crime and to provide supervisors with information on the progress of their rehabilitative efforts. It is clear that a requirement that searches only be conducted when officers have 'reasonable suspicion' or

---

[11] *See United States v. Winding*, 817 F.3d 910, 916 (5th Cir. 2016) ("Supervised release is akin to parole.")

probable cause that a crime has been committed or that a condition of probation has been violated could completely undermine the purpose of the search condition."). Subjecting Korthals to suspicionless, warrantless searches of his computer devices may deter future crime, and thereby protect the public, by making it more difficult for Korthals to commit future crimes undetected.

Second, requiring that any search of the listed items be based on reasonable suspicion would also contradict the supervised release statute, *see* 18 U.S.C. § 3583(d), and the Sentencing Guidelines' policy statement, *see* USSG §5D1.3(b)(7)(C). Section 3583(d) explicitly endorses a warrantless-search condition for "a person," like Korthals, "who is a felon and [is] required to register under [SORNA]." 18 U.S.C. § 3583(d). And the special conditions endorsed by § 3583(d) and §5D1.3(b)(7)(C) both permit suspicionless searches. Both endorse conditions permitting searches either upon "reasonable suspicion," which is covered in Sex Offender Condition 12, or "by any probation officer in the lawful discharge of the officer's supervision functions," which is covered in Sex Offender Condition 13. 18 U.S.C. § 3583(d); U.S.S.G.§ 5D1.3(d)(7)(C); *see, e.g.*, *United States v. Flaugher*, 805 F.3d 1249, 1253 (10th Cir. 2015) ("[Section 3583(d)] authorizes district courts to impose a warrantless-search condition on a felon who is required to register under SORNA provided a 'law enforcement or probation officer' has 'reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person' *or* the search is conducted 'in the lawful discharge of [a probation] officer's supervision functions.'") (emphasis in original); *United States v. Fornes*, 665 F.App'x 615, 617 (9th Cir. Dec. 8, 2016) ("[T]he Sentencing Guidelines recommend suspicionless search conditions for sex offenders . . . [t]o the extent [the defendant] suggests that reasonable suspicion is required even for sex offenders, he is mistaken.") (citing USSG §5D1.3(d)(7)(C)).

Individuals on supervised release have a diminished expectation of privacy and do not enjoy the full protections of the Fourth Amendment. And more importantly, under the "special needs" doctrine, the government's need of supervision, rehabilitation, and protecting the public justifies "even *suspicionless* searches pursuant to a program that [is], considered as a whole, reasonably tailored." *United States v. Midgette*, 478 F.3d 616, 624 (4th Cir. 2007) (finding that North Carolina's probation statute, requiring probationers to submit to warrantless searches, did not violate the Fourth Amendment). Therefore, Sex Offender Condition 13 does not infringe on Korthals's Fourth Amendment rights. At any rate, according to the Fourth Circuit, "supervised release conditions are not constitutionally infirm as long as they comport with 18 U.S.C. § 3583(d)." *United States v. Comer*, 5 F.4th 535, 545 (4th Cir. 2021). Indeed, as already discussed, § 3583(d) and the Guidelines explicitly condone courts imposing conditions authorizing suspicionless, warrantless searches.

Korthals's claim that computer monitoring software is sufficient to accomplish the goals of sentencing is also unavailing. As already discussed above, while the monitoring software provides some protection to the public and creates a level of deterrence, its protection is not absolute. There are countless instances where individuals, on supervised release, are found in possession of cellphones or other electronic communication devices that they failed to disclose to their probation officer. This condition, as written, provides an extra-level of protection to the public and will assist Korthals in his rehabilitation and reintegration into society.

In summary, given the nature and circumstances of Korthals's offense, Korthals's history and characteristics, the need to afford adequate deterrence to criminal conduct, and the need to protect the public from Korthals, Sex Offender Condition 13, as proposed by probation, should be imposed by the Court.

**Govt.'s Sentencing Memorandum**          **Page 23 of 25**

**f. Sex Offender Condition 20 is appropriate and warranted.**

Korthals's objection to Sex Offender Condition 20—that he should not have to notify employers, family members, or others that he has regular contact with that he is required to register as a sex offender – should also be denied.  Given the nature and circumstances of the offense, Korthals's history and characteristics, the need to protect the public from additional crimes by Korthals, and the need to afford adequate deterrence to criminal conduct, this condition as proposed by probation is critical.

 "The risk of recidivism posed by sex offenders is frightening and high."  *Smith v. Doe*, 538 U.S. 84, at 103 (2003); *United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("As Congress has found and as we have discussed, child sex offenders have appalling rates of recidivism . . .").  Korthals's own history validates recidivism concerns.  This condition calls on Korthals to notify employers, family members, and others with whom he has regular contact to be fully aware of his supervised release status and conditions.  In doing so, it helps protect the public and provides some safeguard that those close to Korthals will not put him in a position or situation that violates his supervised release conditions.  Finally, it also helps deter future criminal conduct by Korthals.  In notifying the individuals listed in the Sex Offender Condition 20, Korthals may appreciate that they are fully aware of his status, which would make it more difficult for him to commit future crimes undetected.  *See, e.g.*, *Folks v. United States*, 733 F. Supp. 2d 649, 651 (M.D.N.C. 2010) ("One of the purposes of supervised release is to provide rehabilitation and oversight of the offender to deter their return to crime.").

The condition also involves no greater deprivation of liberty than is reasonably necessary to achieve those factors.  Korthals is still free to take part in daily and work-related activities and form and foster appropriate social relationships.  Inevitably, there will be "some tension in

supervised release between protecting the public and assisting the defendant in getting back on his feet." *Hamilton*, 986 F.3d at 418.  But if the condition complies with statutory conditions of § 3583(d)(1)-(3), the Court should impose the condition.

For these reasons, Korthals's modification to Sex Offender Condition 20 should be denied.

## VI.    Conclusion

For the reasons stated above, the government requests that the Court impose a sentence of 84 months.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
UNITED STATES ATTORNEY

*s/Melanie Smith*
MELANIE SMITH
Assistant United States Attorney
Virginia Bar No. 82663
255 West Main Street, Room 130
Charlottesville, VA 22902
Telephone: (434) 293-3180
Melanie.smith@usdoj.gov